UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JAMES NEFF** and<br>**ELIZABETH CLARK NEFF**,<br><br>　　　　　Debtors. | Case No. **13-60092-7** |
| **MONTANA DEPARTMENT OF LABOR AND INDUSTRY**,<br><br>　　　　　Plaintiff.<br>-vs-<br><br>**ELIZABETH CLARK NEFF** and **JAMES  NEFF**,<br><br>　　　　　Defendants. | Adv No. **13-00013** |

## MEMORANDUM of DECISION

At Butte in said District this 26th day of August, 2013.

Pending in this adversary proceeding is the Motion for partial summary judgment ("Motion") (Docket No. 14) filed on July 13, 2013, by Plaintiff Montana Department of Labor and Industry (the "Department"), which seeks partial summary judgment against Defendants/Debtors James Neff and Elizabeth Clark Neff (together "Neffs," "Debtors," or "Defendants"), and to dismiss Defendants' counterclaim which alleges that the Department violated the automatic stay of 11 U.S.C. § 362(a) by attempting to collect a debt after the date of the filing of their bankruptcy petition.  Defendants filed a response in opposition, which included a statement of uncontroverted facts.  After review, for the reasons set forth below Plaintiff's Motion for partial summary judgment will be granted and Defendants' counterclaim dismissed.

1

This Court has exclusive jurisdiction of the above-captioned Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a). This adversary proceeding is related to the above-captioned Chapter 7 case under § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) to determine dischargeability of particular debts.

## BACKGROUND & PROCEDURAL HISTORY

Neffs filed the instant Chapter 7 petition on January 29, 2013, with Schedules and Statements listing assets with a total value in the amount of $205,906.77 and liabilities in the total amount of $235,311.83. Schedule F lists the Department as having two unsecured nonpriority claims in the amounts of $21,545.06 and $22,481.39, respectively, described as "unemployment benefits overpayment," the former of which is marked "disputed." The Statement of Financial Affairs lists a lawsuit of Neffs against the Board of Labor Appeals, Unemployment Division, State of Montana, in the Montana Twenty-first Judicial District Court, Ravalli County, Cause No. DV 2012-315, described as a petition for judicial review. The deadline to oppose discharge or dischargeability was set for May 3, 2013.

Department filed two Proofs of Claim Nos. 8 and 9 on April 23, 2013. Claim 8 asserts an unsecured nonpriority claim in the amount of $22,481.39 against Debtor James Neff for overpayment of unemployment insurance benefits, including a $5,602.08 penalty. Claim 9 asserts an unsecured nonpriority claim in the amount of $21,545.06 against Debtor Elizabeth C. Neff for overpayment of unemployment insurance benefits, including a $5,274.06 penalty. No objection to allowance of Claims 8 or 9 have been filed.

On April 29, 2013, Department initiated this adversary proceeding by filing a complaint against the Debtors to determine the dischargeability of Debtors' debts to Department. A

discharge of Debtors was entered on May 6, 2013.

The Department's complaint seeks exception of its claims from Debtors' discharge under Count I (False Representation – 11 U.S.C. § 523(a)(2)(A)), and Count II (Larceny – § 523(a)(4)). Defendants filed an answer denying the material allegations under Counts I and II, and asserting affirmative defenses and a counterclaim against the Department for damages for violation of the automatic stay of 11 U.S.C. § 362(a), by continuing to attempt to collect debts after receiving notice of the Debtors' bankruptcy filing. The Department filed a reply to the counterclaim denying that its postpetition proceedings were attempts to collect a debt, and denying that it violated the automatic stay.

The Department filed its Motion for partial summary judgment on July 23, 2013, including a Statement of Uncontroverted Facts. The Department bases its Motion on the "police power" exception to the automatic stay of § 362(b)(4), and argues that its postpetition actions were not stayed because its attempt to collect overpayment and penalize Neffs is a valid police interest and effectuates public policy rather than private rights. Defendants filed a response contending that the Department's postpetition action seeking repayment from Defendants show that the actions were done for a pecuniary purpose and violated the stay.

**FACTS**

The Department's Motion for Partial Summary Judgment includes a "Statement of Uncontroverted Facts" (Dkt. 14) ("SOUF") in support of its Motion as required by Montana Local Bankruptcy Rule 7056-1(a)(1) governing summary judgments. The Department's SOUF sets forth the following facts:

    1. The Department made a determination that the Neffs must repay

unemployment insurance (UI) benefits they received and imposed 52 weeks of disqualification from receiving UI benefits as an administrative penalty. (Complaint ¶ 15; admitted in Answer ¶ 15).

2. The Neffs requested a redetermination and the Department issued a superceding redetermination upholding the initial determination. (Complaint ¶¶ 15-16; admitted in Answer ¶¶ 15-16).

3. The Neffs appealed the superceding redetermination and a contested case hearing was held. (Complaint ¶¶ 16-17; admitted in Answer ¶¶ 16-17).

4. After the contested case hearing, the Hearing Officer issued a decision that the Neffs must repay unemployment insurance (UI) benefits they received because they knowingly misrepresented the hours they were working each week to the Department. (Complaint ¶ 18; not denied in Answer).

5. The Neffs appealed the Hearing Officer decision to the Board of Labor Appeals (BOLA). (Complaint ¶ 19; admitted in Answer ¶ 19).

6. BOLA affirmed and adopted the decision of the Hearing Officer. (Complaint ¶ 20; not denied in Answer ).

7. The Neffs Petitioned the State district court for judicial review of the BOLA decision. (Complaint ¶ 21; admitted in Answer ¶ 21).

8. On November 20, 2012, the Court issued an Opinion and Order of Remand. The Court reviewed the hearings record and found that substantial evidence supported BOLA's factual determination that the Neffs had submitted false statements to the Department regarding the number of hours that each worked. The Court also held it was precluded by the applicable standard of review, Section 39-51-2410(5), MCA, from applying the doctrine of equitable estoppel to the amounts the Neffs owed the Department. However, the Court concluded the Neffs were denied due process in contesting their overpayments and remanded. (Complaint ¶ 22; admitted in Answer ¶ 22).

9. On December 10, 2012, BOLA issued a Remand Order to the Hearings Bureau, instructing the Hearing Officer to adjudicate 1) whether the Neffs were qualified to receive UI benefits, and 2) if the Neffs were not qualified to receive UI benefits, did they knowingly make false statements or knowingly fail to disclose material facts in order to obtain or increase benefits. (Complaint ¶ 23; admitted in Answer ¶ 23).

10. The Hearings Bureau issued a Notice of Telephone Hearing, setting the

4

Neffs' hearing for January 3, 2013. The hearing was reset to January 14, 2013, and again reset to January 31, 2013 at the Neffs' request. (Complaint ¶ 24; admitted in Answer ¶ 24).

    11. On January 30, 2013, the Neffs' counsel provided the Department with a Notice of Bankruptcy Case Filing. (Complaint ¶ 25; admitted in Answer ¶ 25).

    12. On January 31, 2013, the Hearing Officer contacted the Neffs and their counsel for the hearing. The Neffs seemed ready to proceed, but declined to participate after conferring with their counsel. The hearing proceeded with only the Department participating. (Complaint ¶ 26; admitted in Answer ¶ 26).

    13. On February 8, 2013, the Hearing Officer issued a detailed Decision, finding in part that:

> The preponderance of the evidence shows both Elizabeth Neff and James Neff personally misrepresented to the department that they worked only 16 hours per week during the period beginning the benefit week ending January 8, 2011 through the benefit week ending February 11, 2012 despite both having worked more than 40 hours during each of those weeks for Neff's Flooring America. Both Elizabeth Neff and James Neff knew or should have known that those representations were false. The representations were clearly made in connection with their claims for benefits and was material to a determination of their benefit entitlement given that their weekly benefit amount would have been zero if they had correctly reported the hours they worked during those weeks. It is not credible that neither Elizabeth Neff or James Neff did not understand that they were required to report all of the hours they worked for Neff's Flooring America.

(Complaint ¶ 27; not denied in Answer).

    14. The Hearing Bureau's February 8, 2013 Decision found that James Neff is required to repay the Department $22,578.08, and found that Elizabeth Neff is required to repay the Department $21,640.43. (Complaint ¶ 29; not denied in Answer).

    15. The Department filed a proof of claim for James Neff's debt in the amount of $22,481.39 and a proof of claim for Elizabeth Neff's debt in the amount of $21,545.06. (Complaint ¶ 30; admitted in Answer ¶ 30).

The Department attached to its Motion an affidavit of Caroline Holien, who authored the Hearing Decision in the administrative proceedings, along with a copy of the Hearing Decision of February 8, 2013. The Hearing Decision sets forth the Department's claim for repayment of wrongfully received benefits and penalty under MONT. CODE ANN ("MCA") § 39-51-3201 of Montana's Unemployment Insurance Law. MCA § 39-51-101, *et seq.*

Defendants' response brief has on page 2 a heading entitled "Statement of Uncontroverted Facts" which states:

> Defendants agree with Plaintiff's Statement of Uncontroverted Facts 1-14 in it's Brief. What is significant for Plaintiff's motion is that: 1) the State District Court on November 20, 2012 concluded Defendants were denied due process and remanded; 2) Defendants filed the instant bankruptcy January 30, 2013 and there was no final judgment against them at that time; and 3) the Plaintiff proceeded post petition with the action.

Montana Local Bankruptcy Rule 7056-1(a)(3) provides: "Facts Admitted. All material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party." Defendants agree with Plaintiff's Facts 1-14. Fact 15 is admitted pursuant to LBR 7056-1(a)(3) based on the lack of Defendants' Statement of Genuine Issues, and also because the Department's Proofs of Claim are subject to judicial notice as public records.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The

proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary

7

judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Defendants argue that "a question of fact exists as to whether the Plaintiff's motion was brought for pecuniary purposes." The Court disagrees. Based upon Montana statutes defining the public policy behind Montana's Unemployment Insurance Law, upon which the Department's action for recovery wrongfully received benefits insurance and penalties is based, the Court finds that no genuine issues of material fact exist, and that the sole remaining determination is whether Department is entitled to judgment as a matter of law dismissing Defendants' counterclaim under the police power exception to the stay of § 362(b)(4).

**II. The Department's Motion for Partial Summary Judgment**.

The Debtors' filing of their Chapter 7 bankruptcy petition on January 29, 2013, gave rise to an "automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993). The Ninth Circuit construed the automatic stay *In re Gruntz*, 202

F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

Exceptions to the stay are listed at § 362(b), including the "police power" exception of § 362(b)(4): "Section 362(b)(4) provides that the filing of a bankruptcy petition does not operate as an automatic stay 'of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power.' " *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) (quoting 11 U.S.C. § 362(b)(4)).

In the Ninth Circuit the phrase "police or regulatory power" is generally construed to "refer to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *City & Cnty. of S.F. v. PG & E Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006), *cert. denied* 549 U.S. 882, 127 S.Ct. 208, 166 L.Ed.2d 144 (2006), quoting *Hillis Motors,* 997 F.2d at 591.

The Ninth Circuit applies two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power as defined in 11 U.S.C. section 362(b)(4): The "pecuniary purpose" and the "public policy" test. *PG & E*, 433 F.3d at 1123-24; *Universal Life Church v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir.1997). Satisfaction of either test will suffice to exempt the action from the reach of the automatic stay under the police power exception. *Id.*; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005).

>The Ninth Circuit explained:
>
>>If the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply. *Universal Life*, 128 F.3d at 1297; see also *Mirant*, 398 F.3d at 1109 ("If the suit seeks to protect the government's pecuniary interest, the § 362(b)(4) exception does not apply. On the other hand, if the suit seeks to protect public safety and welfare, the exception does apply.").

*PG & E*, 433 F.3d at 1124.

The determination whether a particular governmental action qualifies as a police or regulatory action must be made on the basis of a case-specific inquiry. *Cal. ex rel. Brown v. Villalobos*, 453 B.R. 404, 410 (D. Nev. 2011), quoting *PG & E*, 433 F.3d at 1127. In *PG & E*, the Ninth Circuit affirmed actions by the California Attorney General and the City of San Francisco for restitution because the claims did not relate primarily to the protection of the government's pecuniary interest, so the restitution claim "fits comfortably within section 362(b)(4)'s 'police or regulatory power' exception." 433 F.3d at 1125.

The Defendants argue that a genuine issue of fact exists whether the Department's actions were brought for pecuniary purposes. An example of a suit that would fail to satisfy the pecuniary purpose test would be one in which the government sues a party to a contract for contractual damages. *Villalobos*, 453 B.R. at 413 (citations omitted). The Department's postpetition actions did not seek to recover contractual damages, but instead were to recover the amounts of unemployment benefits wrongfully received by Defendants' false representations, and penalties pursuant to MCA § 39-51-3201 of Montana's Unemployment Insurance Law. Such action was not intended to gain the Department an advantage over creditors or potential creditors.

The Department admits that its claims are subject to the same treatment of similarly situated claims in this Chapter 7 case, while in the instant adversary proceeding it seeks to except its claims from Debtors' discharge. As the district court in *Villalobos* explained, when the government is seeking only the entry of a money judgment against debtors it would simply fix the amount of the government's unsecured claim against debtors; it would not convert the government into a secured creditor, force payment of the prepetition debt or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate. 453 B.R. at 414, quoting *In re Commonwealth Companies, Inc.,* 913 F.2d 518, 524 (8th Cir. 1990); *PG & E,* 433 F.3d at 1124. Based on the fact that the Department's postpetition actions would not allow the Department to obtain an advantage over creditors in this Chapter 7 bankruptcy, § 362(b)(4) exempted the Department's actions from the automatic stay. *PG & E,* 433 F.3d at 1124; *Villalobos*, 453 B.R. at 414.

> "Under the 'public purpose' test, the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.' " *Mirant*, 398 F.3d at 1109 (quoting *Continental Hagen Corp.*, 932 F.2d at 833). If the primary purpose of the suit is to effectuate public policy, then the exception to the automatic stay applies. However, "[a] suit does not satisfy the 'public purpose' test if it is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Id.*

*PG & E*, 433 F.3d at 1125.

From examination of the uncontroverted facts and Montana's Unemployment Insurance Law, the Court finds and concludes that the Department's primary purpose of its postpetition actions is to effectuate public policy. The Court sees no evidence that the Department's actions were brought primarily to advantage discrete and identifiable entities, but rather the Department's postpetition actions were to collect wrongfully paid unemployment benefits and penalties.

11

Collection of wrongfully paid unemployment benefits and penalties is specifically authorized under MCA §§ 39-51-3201 and 39-51-3206 of Montana's Unemployment Insurance Law. In interpreting Chapter 39, Montana's public policy is declared at MCA § 39-51-102:

> **Declaration of state public policy**. As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows:
>
> * * * *
>
> (3) The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state required the enactment of this chapter *under the police powers of the state* for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no thought of their own.

(Emphasis added).

Congress has evidenced its intent that a government unit's police or regulatory action should not be litigated in federal bankruptcy court. *PG & E,* 433 F.3d at 1127. The police power exemption is not limited to situations where imminent and identifiable harm to the public health and safety or urgent public necessity is shown, nor is ongoing or future harm required for exemption from the automatic stay. *Villalobos*, 453 B.R. at 411. "Punishment for past conduct is part of a governmental unit's police power." *Id.* "Punishment in the form of civil penalties, disgorgement, and restitution serves a public, rather than pecuniary, purpose." *Id.* at 412, citing *PG & E*, 433 F.3d at 1125.

The district court explained in *Villalobos*:

> Disgorgement, civil penalties, and restitution all satisfy a public purpose and the seeking thereof does not convert the action into one that fails the pecuniary purpose test. The Ninth Circuit observed that "[d]isgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *Sec. Exch. Comm'n v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir.1998). While disgorgement may inure to the benefit of CalPERS, the Ninth Circuit

> concluded that the primary purpose of disgorgement is to deprive the wrongdoer of ill-gotten gains, and to "deter others from violating securities laws by making violations unprofitable." *Id.*
>
> Civil penalties, like disgorgement, also serve a public, rather than a pecuniary, purpose. The California Supreme Court noted that civil penalties are "a means of securing obedience to statutes validly enacted under the police power." *Hale v. Morgan*, 22 Cal.3d 388, 149 Cal.Rptr. 375, 381, 584 P.2d 512 (1978).

453 B.R. at 413.

In sum, this Court finds and concludes that no genuine issue of material fact exists, and that the Department is entitled to partial summary judgment as a matter of law dismissing Defendants' counterclaim for damages for violation of the automatic stay. The Department's postpetition actions are exempt from the stay under the police and regulatory power exception of § 362(b)(4), under both the pecuniary purpose test and the public policy test.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b).

2. The Department's Motion for partial summary judgment on Debtors' counterclaim based on the police power exception to the automatic stay under § 362(b)(4) is a core proceeding under 28 U.S.C. §§ 157(b)(2).

3. The postpetition action initiated by Department against the Debtors for recovery of wrongfully received benefits and penalties pursuant to the Unemployment Insurance Law of the State of Montana are exercises of the police and regulatory power of the State of Montana under MCA §§ 39-51-3201 and 39-51-3206. As such the Department's postpetition actions are excepted from the automatic stay under 11 U.S.C. § 362(b)(4) as a continuation of actions or proceedings by a governmental unit to enforce such unit's police or regulatory power.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Defendants' objection; granting the Plaintiff's Motion for partial summary judgment and dismissing Defendant's counterclaim for damages for violation of the automatic stay of 11 U.S.C. § 362(a).

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana